IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

DONALD NICODEMUS
Plaintiff-Appellant,

v.

CITY OF SOUTH BEND, INDIANA
Defendant-Appellee

And

STATE OF INDIANA,
Intervenor/Defendant-Appellee

On Appeal from the United States District Court
for the Northern District of Indiana,
South Bend Division, No. 3:23-cv-00744-DRL-MGG

**BRIEF OF *AMICUS CURIAE* THE NATIONAL PRESS
PHOTOGRAPHERS ASSOCIATION
AND 5 NEWS MEDIA ORGANIZATIONS
IN SUPPORT OF PLAINTIFF-APPELLANT
SUPPORTING REVERSAL**

Gregg P. Leslie
    Gregg.Leslie@asu.edu
Zachary R. Cormier
    zcormier@asu.edu
First Amendment Clinic
Public Interest Law Firm
Sandra Day O'Connor College of Law
Arizona State University
111 E. Taylor St., Mailcode 8820
Phoenix, AZ 85004
(480) 727-7398

*Additional counsel:*

Mickey H. Osterreicher
General Counsel
National Press Photographers Association
70 Niagara Street
Buffalo, NY 14202
(716) 983-7800
lawyer@nppa.org

Alicia Calzada
Deputy General Counsel
National Press Photographers Association
Alicia Wagner Calzada, PLLC
926 Chulie Drive, suite 16
San Antonio, Texas 78216
(210) 825-1449
Advocacy@nppa.org

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1099

Short Caption: Donald Nicodemus v. City of South Bend, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    (Full names of represented parties immediately precedes this form)

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Alicia Wagner Calzada, PLLC; First Amendment Clinic, Public Interest Law Firm, Ariz. St. U. College of Law

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    None of the client organizations have parent corporations

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    None of the client organizations have any publicly held companies that own 10% of their stock.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: s/ Gregg P. Leslie      Date: 3/19/2024

Attorney's Printed Name: Gregg P. Leslie

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑   No ☐

Address: ASU College of Law, 111 E. Taylor St., Mailcode 8820

    Phoenix, AZ 85004

Phone Number: (480) 727-7398      Fax Number: 

E-Mail Address: Gregg.Leslie@asu.edu

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

## Supplement to list all parties represented

Appellate Court No: 24-1099

Short Caption: Donald Nicodemus v. City of South Bend, et al

The names of the parties represented by the attorneys filing the amicus brief do not fit in the space provided on the main form, and are included here instead:

> National Press Photographers Association
>
> American Society of Media Photographers, Inc.
>
> North American Nature Photography Association
>
> The Radio Television News Directors Association, d/b/a Radio Television Digital News Association
>
> The Society of Environmental Journalists
>
> Society of Professional Journalists

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1099

Short Caption: Donald Nicodemus v. City of South Bend, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☑     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    (Full names of represented parties immediately precedes this form)

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    Alicia Wagner Calzada, PLLC; First Amendment Clinic, Public Interest Law Firm, Ariz. St. U. College of Law

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None of the client organizations have parent corporations

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None of the client organizations have any publicly held companies that own 10% of their stock.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: s/ Zachary R. Cormier      Date: 3/19/2024

Attorney's Printed Name:  Zachary R. Cormier

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address:  ASU College of Law, 111 E. Taylor St., Mailcode 8820

    Phoenix, AZ 85004

Phone Number: (480) 727-7398      Fax Number:

E-Mail Address: zcormier@asu.edu

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

**Supplement to list all parties represented**


Appellate Court No: 24-1099

Short Caption: Donald Nicodemus v. City of South Bend, et al


The names of the parties represented by the attorneys filing the amicus brief do not fit in the space provided on the main form, and are included here instead:

> National Press Photographers Association

> American Society of Media Photographers, Inc.

> North American Nature Photography Association

> The Radio Television News Directors Association, d/b/a Radio Television Digital News Association

> The Society of Environmental Journalists

> Society of Professional Journalists

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1099

Short Caption: Donald Nicodemus v. City of South Bend, et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑       **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
        (Full names of represented parties immediately precedes this form)


(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
        Alicia Wagner Calzada, PLLC; First Amendment Clinic, Public Interest Law Firm, Ariz. St. U. College of Law


(3)     If the party, amicus or intervenor is a corporation:

        i)      Identify all its parent corporations, if any; and

                None of the client organizations have parent corporations

        ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

                None of the client organizations have any publicly held companies that own 10% of their stock.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

        N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

        N/A

---

Attorney's Signature: s/ Mickey H. Osterreicher          Date: 3/19/2024

Attorney's Printed Name: Mickey H. Osterreicher

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: 70 Niagara Street

        Buffalo, NY 14202

Phone Number: (716) 983-7800            Fax Number:

E-Mail Address: lawyer@nppa.org

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

**Supplement to list all parties represented**

Appellate Court No: 24-1099

Short Caption: Donald Nicodemus v. City of South Bend, et al

The names of the parties represented by the attorneys filing the amicus brief do not fit in the space provided on the main form, and are included here instead:

     National Press Photographers Association

     American Society of Media Photographers, Inc.

     North American Nature Photography Association

     The Radio Television News Directors Association, d/b/a Radio Television Digital News Association

     The Society of Environmental Journalists

     Society of Professional Journalists

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1099

Short Caption: Donald Nicodemus v. City of South Bend, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    (Full names of represented parties immediately precedes this form)

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Alicia Wagner Calzada, PLLC; First Amendment Clinic, Public Interest Law Firm, Ariz. St. U. College of Law

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None of the client organizations have parent corporations

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None of the client organizations have any publicly held companies that own 10% of their stock.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: s/ Alicia Calzada    Date: 3/19/2024

Attorney's Printed Name: Alicia Calzada

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 926 Chulie Drive, Suite 16

San Antonio, Texas 78216

Phone Number: (210) 825-1449    Fax Number:

E-Mail Address: Advocacy@nppa.org

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

**Supplement to list all parties represented**


Appellate Court No: 24-1099

Short Caption: Donald Nicodemus v. City of South Bend, et al


The names of the parties represented by the attorneys filing the amicus brief do not fit in the space provided on the main form, and are included here instead:

      National Press Photographers Association

      American Society of Media Photographers, Inc.

      North American Nature Photography Association

      The Radio Television News Directors Association, d/b/a Radio Television Digital News Association

      The Society of Environmental Journalists

      Society of Professional Journalists

# DISCLOSURE STATEMENT

National Press Photographers Association is a 501(c)(6) nonprofit organization with no parent company, and it issues no stock.

American Society of Media Photographers, Inc. (ASMP) has no parent company nor issues stock, thus no publicly-held company owns 10% or more of its stock.

North American Nature Photography Association (NANPA) has no parent company nor issues stock, thus no publicly-held company owns 10% or more of its stock.

The Radio Television News Directors Association, d/b/a Radio Television Digital News Association (RTDNA)) has no parent company nor issues stock. Accordingly, no publicly-held company owns 10% or more of its stock.

The Society of Environmental Journalists is a 501(c)(3) non-profit educational organization. It has no parent corporation and issues no stock.

Society of Professional Journalists is a non-stock corporation with no parent company.

# TABLE OF CONTENTS

Disclosure Statement.................................................................................... iii

Table of Authorities.......................................................................................v

Statement of Interests..................................................................................vi

Introduction and Summary of Argument ....................................................1

Argument.......................................................................................................3

    I.    Section 35-44.1-2-14's Twenty-Five-Foot Stay-Back Zone is Both
           Unworkable and Inconsistent with the Protected First Amendment Right
           to Record Law Enforcement Officers in Public. ........................................3

    II.    The Facial Overbreadth of Section 35-44.1-2-14 Restricts First
           Amendment Activity and will Continue to do so Absent Intervention by
           This Court. .................................................................................................7
           A. Section 35-44.1-2-14 Places Restrictions on Public Presence
               Necessarily Implicating Protected First Amendment Rights. ...............9
           B. Section 35-44.1-2-14 Gives Law Enforcement Officers Impermissible
               Unfettered Discretion in Ordering Dispersal Even when Compliance
               with the Order is not Integral to Carrying Out Law Enforcement
                Duties...................................................................................................14
           C. Section 35-44.1-2-14 is a Content-Based Restriction that does not
               Satisfy Strict Scrutiny. .......................................................................16
            D. Even if Section 35-44.1-2-14 is viewed as a Time, Place, or Manner
               restriction or a Law that Targets Conduct, it does not Satisfy
               Intermediate Scrutiny. .......................................................................19
    III.    Section 35-44.1-2-14 is Unconstitutionally Vague. ..................................20

Conclusion ..................................................................................................24

Appendix .....................................................................................................25

Certificate of Compliance ..........................................................................30

# TABLE OF AUTHORITIES

## Cases

*American Civil Liberties Union of Illinois v. Alvarez*,
  679 F.3d 583 (7th Cir. 2012) ...................................................................4

*Animal Legal Def. Fund v. Kelly*, 9 F.4th 1219 (10th Cir. 2021)..............................5

*Arizona Broadcasters Ass'n v. Brnovich*,
  626 F. Supp. 3d 1102 (D. Ariz. 2022)...................................................................21

*Bell v. Keating*, 697 F.3d 445 (7th Cir. 2012) ...................................... 10, 12, 22, 25

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ...........................................................9

*Burson v. Freeman,* 504 U.S. 191 (1992) ...................................................................18

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
  596 U.S. 61 (2022) ...........................................................18

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ...................................................23

*City of Houston v. Hill*, 482 U.S. 451 (1987)...........................................................15

*Fields v. City of Philadelphia*, 862 F.3d 353 (3rd Cir. 2017)....................................5

*Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995) ...........................................6

*Gaudiya Vaishnava Soc'y v. City & Cnty. of San Francisco*,
  952 F.2d 1059 (9th Cir. 1990)...................................................................22

*Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011) ...........................................................5

*Goyette v. City of Minneapolis*, 338 F.R.D. 109 (D. Minn. 2021)..........................11

*Grayned v. City of Rockford*, 408 U.S. 104 (1972)...................................................24

*Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048 (7th Cir. 2004) ..................12

*Index Newspapers LLC v. United States Marshalls Service*,
  977 F3.d 817 (9th Cir. 2020) ...........................................................11

*Irizarry v. Yehia*, 38 F.4th 1282 (10th Cir. 2022).......................................................6

*Kolender v. Lawson*, 461 U.S. 352 (1983)...............................................................24

*Lewis v. City of New Orleans*, 415 U.S. 130 (1974)...............................................16

*McCullen v. Coakley*, 573 U.S. 464 (2014) ...................................................... 20, 22

*Norton v. City of Springfield, III,* 768 F.3d 713 (7th Cir. 2014) ...............................18

*Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015) ...............................................18

*Reporters Comm. for Freedom of the Press v. Rokita*,
  1:23-cv-01805-JRS-MG (S.D. Ind. Mar. 8, 2024) ................................9

*Schenk v. Pro-Choice Network of Western N.Y.*,
  519 U.S. 357, 378-79 (1997) ..........................................................3, 24

*Sharpe v. Winterville Police Dept.*, 59 F.4th 674 (4th Cir. 2023) ............................6

*Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000) ....................................6

*Smith v. People of the State of California*, 361 U.S. 147 (1959) ...........................23

*Turner v. Lt. Driver*, 848 F.3d 678 (5th Cir. 2017) ...................................................6

*United States v. Williams*, 553 U.S. 285 (2008) ....................................................8

*Village of Hoffman Estates. v. Flipside, Hoffman Estates., Inc.*,
  455 U.S. 489 (1982) ...........................................................................26

*W. Watersheds Project v. Michael*, 869 F.3d 1189 (10th Cir. 2017) ......................5

*Ward v. Rock Against Racism*, 491 U. S. 781 (1989) ............................................22

**Statutes**

Ind. Code § 35-44.1-2-14 ................................................................... *passim*

**Other Authorities**

Corrections and Criminal Law Hearing on HB 1186 (Mar. 7, 2023) .....................19

*United States v. Williams*, 553 U.S. 285 (2008) ....................................................8

# STATEMENT OF INTERESTS

*Amici* are associations that represent and work with journalists on a daily basis, and have a significant interest in opposing limitations placed on newsgathering like the 25-foot buffer imposed here.

**National Press Photographers Association** (NPPA), Founded in 1946, is a 501(c)(6) non-profit professional organization dedicated to the advancement of photojournalism, its creation, editing and distribution in all news media. NPPA encourages photojournalists to reflect the highest standards of quality in their professional performance, in their business practices and in their personal code of ethics. NPPA vigorously promotes freedom of the press in all its forms.  Its members include still and television photographers, editors, students and representatives of businesses that serve the photojournalism industry.

**American Society of Media Photographers, Inc.** (ASMP) is a 501(c)(6) not-for-profit trade association, established in 1944 to protect and promote the interests of professional photographers and all visual creators who earn their living by making works intended for publication, display, and every avenue of art and commerce. With more than 6,500 members across 38 chapters and in 22 countries, working in every genre of photography, videography, content creation, and media, ASMP is a leading trade organization representing professional creators' interests.

**North American Nature Photography Association** (NANPA) is a 501(c)(6) non-profit organization founded in 1994. NANPA promotes responsible nature photography (both stills and video) as an artistic medium for the documentation, celebration, and protection of the natural world. NANPA is a critical advocate for the rights of nature photographers on a wide range of issues, from intellectual property to land access.

The Radio Television News Directors Association, d/b/a **Radio Television Digital News Association** (RTDNA) is a 501(c)(6) non-profit association incorporated in Delaware, with headquarters in Washington, DC. RTDNA is the world's largest professional organization devoted exclusively to broadcast and digital journalism. Founded as a grassroots organization in 1946, RTDNA's mission is to promote and protect responsible journalism. RTDNA defends the First Amendment rights of electronic journalists throughout the country, honors outstanding work in the profession through the Edward R. Murrow Awards and provides members with training to encourage ethical standards, newsroom leadership and industry innovation.

**The Society of Environmental Journalists** is a 501(c)(3) non-profit educational organization. It is the only North-American membership association of professional journalists dedicated to more and better coverage of environment-related issues.

**Society of Professional Journalists** (SPJ) is the nation's most broad-based journalism organization, dedicated to encouraging the free practice of journalism and stimulating high standards of ethical behavior. Founded in 1909 as Sigma Delta Chi, SPJ promotes the free flow of information vital to a well-informed citizenry through the daily work of its roughly 6,000 members; works to inspire and educate current and future journalists through professional development; and protects First Amendment guarantees of freedom of speech and press through its advocacy efforts.

## INTRODUCTION AND SUMMARY OF ARGUMENT[1]

This appeal implicates First Amendment abridgments by Indiana's Section 35-44.1-2-14, "Unlawful encroachment on an investigation" which states:

> A person who knowingly or intentionally approaches within twenty-five (25) feet of a law enforcement officer lawfully engaged in the execution of the law enforcement officer's duties after the law enforcement officer has ordered the person to stop approaching commits unlawful encroachment on an investigation, a Class C misdemeanor.

Ind. Code § 35-44.1-2-14. This law enables police to arbitrarily impose a 25-foot barrier between themselves and another person, upon order that they not approach, and criminalizes the failure to comply with that order. In this case, the law has—as expected—been used to prevent the legitimate newsgathering and reporting activities of journalists. The state legislature didn't hide its intent of creating this law with the goal of giving law enforcement the arbitrary discretion to restrict photographers and other police observers from documenting police activity in public because it is "none of their business," *see infra* at II.C. Even the term "encroachment" in the title of the law turns First Amendment principles on its

[1] All parties have consented to the filing of this Amicus brief consistent with Fed. R. App. P. 29(a)(2). No party or party's counsel authored the brief in whole or in part or contributed money that was intended to fund preparing or submitting the brief; and no person–other than the amicus curiae, its members, or its counsel–contributed money that was intended to fund preparing or submitting the brief, consistent with Fed. R. App. P. 29(a)(4)(E).

    Counsel for *Amici* would like to acknowledge the assistance of two students from the First Amendment Clinic of the Arizona State University Sandra Day O'Connor College of Law, Markus Auers and Dahlia Styles, in writing this brief.

head, with one definition being, "entry to another's property without right or permission," thus imbuing officers with rights they do not possess while stripping citizens and journalists of their First Amendment protections in public places. With no exceptions for newsgathering or legitimate First Amendment activity, the statute allows police to severely chill the observation and/or documentation of police activity in a public street, sidewalk or other public space—an officer can simply order an individual to stay back without any justifiable reason or officers may band together and spread out to create a web of 25-foot stay-back zones around the activity they want to remain unseen.

The Supreme Court foreclosed this type of "floating buffer zone" that restricts speech in *Schenck v. Pre-Choice Network of Western N.Y.* The instant statute directly chills the constitutionally protected right to observe and photograph police performing their official duties in public and is unworkable because it imposes a perimeter that will constantly be in flux. And whether examined on its face or as a substantially overbroad law, the statute must be found to be unconstitutional.

The extent of the interference may, because the statute applies to *all* people near an officer, present complicated issues that might explain why the court below misapprehended this as *only* a question of unconstitutional overbreadth (and failed to find such), while the appellant argues that a more direct question of

unconstitutionality based on the activity restricted and the unbridled discretion

granted to police officers governs the outcome of this case. But the repeated

application of the law against journalists tells a different story.

*Amici* assert that the law is unconstitutional as an impermissible burden on

speech and the press, is a content-based restriction that fails strict scrutiny, and

because of its overbreadth, must fail. As this case demonstrates—and *Amici* will

further show—a restriction on approaching an officer within 25 feet after being

ordered not to do so under any circumstances covers instances where an individual

may be attempting to come closer to better observe and/or document an officer's

actions in public; such arbitrarily set distances run counter to clearly established

time, place and manner restrictions, particularly when pre-existing law effectively

governs attempts to interfere with officers.

## ARGUMENT

I.    **Section 35-44.1-2-14's Twenty-Five-Foot Stay-Back Zone is Both
      Unworkable and Inconsistent with the Protected First Amendment
      Right to Record Law Enforcement Officers in Public.**

Because the application of Section 35-44.1-2-14 is so broad, it necessarily

will be imposed in an arbitrary and capricious manner—a result that has clearly

impacted speech in this and other cases. The Supreme Court has recognized that

"floating buffer zones" that restrict speech within a certain distance of individuals

who may be moving are difficult to comply with. *Schenk v. Pro-Choice Network of*

*Western N.Y.*, 519 U.S. 357, 378-79 (1997). In *Schenk*, an injunction created a buffer zone that restricted protesting within fifteen feet of individuals entering abortion clinics. The Supreme Court reasoned that "attempts to stand 15 feet from someone entering or leaving a clinic and to communicate a message . . . [would] be hazardous if one wishes to remain in compliance with the injunction." *Id*. at 379. These conditions are even more hazardous when encountering moving officers and other people attempting to observe them rather than the fixed point of an entranceway with individuals trying to enter it. This hazardous predicament is further exacerbated when there are multiple officers and crowds of people (such as at a large public event) including protestors and journalists creating a pinball effect of non-compliant violations of this law. Like the buffer zone in *Shenk*, the moving stay-back zones created by Section 35-44.1-2-14 are unworkable, not narrowly tailored, and burden far more protected speech than is necessary to achieve their purpose.

The right to record police engaged in official activity has clearly been recognized by the Seventh Circuit along with seven other circuit courts. This Court upheld the right to record police in *American Civil Liberties Union of Illinois v. Alvarez*, where the Court upheld a preliminary injunction to prevent enforcement of an eavesdropping statute against plaintiffs who planned to record police for newsgathering purposes. 679 F.3d 583 (7th Cir. 2012). The Court held that "[t]he

act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording." *Id*. at 595. The Court further held that this right extended to recordings of police carrying out their duties in public. *Id*. at 600.

Videorecording is "unambiguously" speech-creation, not mere conduct. *Animal Legal Def. Fund v. Kelly*, 9 F.4th 1219, 1228 (10th Cir. 2021). "If the creation of speech did not warrant protection under the First Amendment, the government could bypass the Constitution by simply proceeding upstream and damming the source of speech." *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1196 (10th Cir. 2017) (internal citations omitted).

Additionally, the right to record law enforcement officers performing their duties in public has been recognized by seven other Circuits. *See Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011)(a bystander with a cell phone has a right to videorecord officers making an arrest from roughly ten feet away); *Fields v. City of Philadelphia*, 862 F.3d 353 (3rd Cir. 2017)(two individuals videorecording police without interfering with arrests were protected by the First Amendment); *Turner v. Lt. Driver*, 848 F.3d 678, 688, 689 (5th Cir. 2017) (recognizing "the First Amendment's protection of the broader right to film" and holding "the First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit Government from limiting the stock of information from

which members of the public may draw."); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995)(arrest for videotaping protest and individual protesters was unjustified); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000)(preventing the videorecording of an arrest violated First Amendment rights; *Irizarry v. Yehia*, 38 F.4th 1282 (10th Cir. 2022)(internet journalist had a right to record a traffic stop); *Sharpe v. Winterville Police Dept.*, 59 F.4th 674 (4th Cir. 2023)(town policy banning vehicle occupants from recording their own traffic stops violated First Amendment rights).

The widespread recognition of the right to record police officers by the Seventh Circuit is controlling when examining Section 35-44.1-2-14.

Respecting the right to record law enforcement officers is necessary because this right enables speech that serves an important public purpose. When a person or journalist is recording a police interaction, they are not doing so merely to engage in the action of recording; they are doing so to convey a message and gather information on important matters of public concern. Indeed, the recording of law enforcement has even led to changes within the law and critiques of police. *See e.g.,* Jamillah B. Williams, Naomi Mezey, & Lisa Singh, #BLACKLIVES MATTER: FROM PROTEST TO POLICY, 28 Wm. & Mary J. Race, Gender & Soc. Just. 103 (2021). Because the Indiana statute restricts newsgathering activity that is protected by the First Amendment, it is subject to strict scrutiny.

Section 35-44.1-2-14, in particular, places a significant burden on the right to record law enforcement officers because its twenty-five-foot stay-back zone causes substantial confusion and is ultimately unworkable. (While the statute actually bars anyone who "approaches" an officer, the present case demonstrates that such laws end up being used inappropriately to force individuals to move away from an officer or scene, thus creating a constantly moving encroachment zone.)

The right to record police, recognized by the Seventh Circuit and other United States courts, serves an important purpose of allowing individuals to gather and disseminate news while reporting on the actions of public officials performing their official duties. Section 35-44.1-2-14's twenty-five-foot buffer zone is unworkable and places a significant and unjustifiable burden on this right. Accordingly, Section 35-44.1-2-14 cannot survive First Amendment scrutiny.

## II. The Facial Overbreadth of Section 35-44.1-2-14 Restricts First Amendment Activity and will Continue to do so Absent Intervention by This Court.

The Indiana statute is overbroad in its restriction of a substantial amount of First Amendment protected activity. It is not necessary to show that the law has *some* constitutional applications. A statute is facially overbroad if the "statute's overbreadth [is] substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008). Overbreadth challenges are not only available to challenging laws that

directly restrict speech but also to challenging laws that "purport to regulate the time, place, and manner of expressive or communicative conduct." *Broadrick v. Oklahoma*, 413 U.S. 601, 612-13 (1973).

Here, Section 35-44.1-22-14 burdens a substantial amount of speech and is an overbroad content-based restriction. Even if viewed as a reasonable time, place, and manner restriction (which it is not given its arbitrarily set 25-foot distance), the statute is still overbroad in its substantial burden on newsgathering and protected First Amendment activity and it cannot survive intermediate scrutiny. *See infra* at II.D. Section 35-44.1-22-14's overbreadth is apparent through its restrictions on public "presence"—the mere act of being in public—that unreasonably restricts individuals from engaging in important protected First Amendment rights, the unfettered discretion given to law enforcement officers to issue stay-back and dispersal orders, and the statute's inability to survive both strict and intermediate scrutiny.

In a separate case challenging this same statute, which was brought by news organizations and press associations, the U.S. District Court for the Southern District of Indiana recently denied Defendants' Joint Motion to Stay. Defendants had sought a stay in that case due to this court's consideration of some of the same issues in this case. *See Reporters Comm. for Freedom of the Press v. Rokita*, 1:23-cv-01805-JRS-MG (S.D. Ind. Mar. 8, 2024), Docket No. 41. The Court found that

*Nicodemus* chiefly presents a facial First Amendment challenge. … Here, Plaintiffs challenge the Statute on facial First Amendment grounds, but also bring claims under additional First Amendment (as applied) and Fourteenth Amendment (void for vagueness) grounds.

*Id.,* Docket No. 46 at 6. While the plaintiff here disputes that he only argued a facial challenge, it is clear that courts in the Seventh Circuit need guidance in all aspects of challenges to this statute.

### A. Section 35-44.1-2-14 Places Restrictions on Public Presence Necessarily Implicating Protected First Amendment Rights.

In a case that is closely on point, this Circuit held that a nearly identical city ordinance was facially overbroad. In *Bell v. Keating*, "[a] Chicago city ordinance that criminalize[d] an individual's refusal to leave a scene when so instructed by a police officer when three or more individuals are engaging in disorderly conduct nearby" was overbroad because of the impact on the First Amendment. *Bell v. Keating*, 697 F.3d 445, 449, 461(7th Cir. 2012). Despite the ordinance containing no reference to protected First Amendment activity, the First Amendment was implicated and the statute was found to be overbroad because the ordinance could have been "applied to disperse people engaged in peaceful speech or expressive conduct, including on topics of public concern." *Id.* at 457.

The orders to move away from police officers allowed by Section 35-44.1-2-14 have the same effect on First Amendment rights as "dispersal orders" allowed by laws like the city ordinance this Circuit held as overbroad in *Bell*. In both cases,

the law has given police officers the authority to order individuals to move and, in doing so, given officers the authority to restrict public presence. In addition to their use in restricting the right to protest as seen in *Bell*, dispersal orders have also been used by police officers to impermissibly restrict the First Amendment rights of journalists. *See Goyette v. City of Minneapolis*, 338 F.R.D. 109, 118 (D. Minn. 2021) (Dispersal orders issued to the press during the George Floyd protests "were motivated at least in part by the press's engagement in constitutionally protected activity."); *Index Newspapers LLC v. United States Marshalls Service*, 977 F3.d 817, 834 (9th Cir. 2020) (Members of the press were targeted with dispersal orders "when they were not mixed with, or even proximate to, protesters.").

In the instant case, the court below held that the Indiana statute regulates conduct, with only an incidental restriction on speech. See Op. at 12. But as *Bell* recognizes, a law that restricts public presence—like Section 35-44.1-2-14— necessarily implicates the First Amendment. This holds true even when a law purports to only regulate conduct and doesn't directly reference protected First Amendment activity because the relationship between public presence and "expressive conduct is intimate and profound." *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1059 (7th Cir. 2004). *See also Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 950 (9th Cir. 1997) (reasoning that a curfew restriction

on minors implicated the First Amendment because it "significantly restrict[ed] expression in all forums for one-third of each day.").

There are no First Amendment exceptions to Section 35-44.1-2-14. Rather, law enforcement officers are given unfettered discretion to issue restrictive orders pursuant to Section 35-44.1-2-14, even against those engaged in protected First Amendment activity, and even when compliance with the order is not integral to law enforcement duties, thus making it an overbroad regulation.

In *Bell*, this Court determined that the Chicago city ordinance was facially overbroad because officers were given power to enforce dispersal orders even when "dispersal [was] not integral to law enforcement's ability to control the nuisances." *Id*. at 461. Even though the Court determined that dispersal orders could not be triggered by protected expression under the ordinance, the Court found that the statute was invalid because it placed a substantial burden on protected First Amendment activity. *Id*. at 456, 461.

Section 35-44.1-2-14 allows for an officer to issue an order to stop approaching for any reason if the "officer is engaged in the execution of the law enforcement officer's duties." There is no requirement that the approaching individual has any impact on those duties. This broad enforcement power given to law enforcement officers necessarily burdens protected First Amendment activity, such as observing and recording police encounters for newsgathering purposes.

Section 35-44.1-2-14 goes even further than the constitutionally infirm ordinance in *Bell*, where a dispersal order could only be triggered by activity that is not protected by the First Amendment. Section 35-44.1-2-14, on the other hand, does not limit an officer to issue a stay-back or dispersal order only when there is potentially harmful non-protected activity. Instead, Section 35-44.1-2-14 gives law enforcement officers unfettered discretion to issue such orders to an individual for any reason—or no reason at all—if the individual approaches within twenty-five feet of the officer.

Section 35-44.1-2-14, like the ordinance in *Bell*, abridges the First Amendment because it allows officers to restrict the movement of those engaged in activity protected by the First Amendment. Like the ordinance in *Bell*, Section 35-44.1-2-14 does not directly reference any protected First Amendment activity, but orders may be issued to any individual engaged in such protected activity and the statute provides no carve outs for newsgathering or other activities protected by the First Amendment. Accordingly, the statute authorizes an officer to issue an order to stay back or disperse to anyone engaged in newsgathering, protest, or any other activity protected by the First Amendment as long the individual is within or approaching twenty-five feet of an officer.

This substantial burden on speech and the press is not speculative. It is demonstrated by the statute's enforcement or threatened enforcement against those

engaged in protected First Amendment activity. Mr. Nicodemus was engaged in a protected newsgathering activity when Section 35-44.1-2-14 was enforced against him. Similarly, a member of amicus NPPA, visual journalist Jeremy Hogan, felt compelled to cease engaging in newsgathering activities to avoid being arrested pursuant to the statute. *See* Appendix A, Hogan Decl. at 4. Mr. Hogan was observing and photographing a pedestrian-vehicle accident scene in Bloomington, Indiana when officers ordered him to move back. An officer then threatened Mr. Hogan with arrest under the twenty-five-foot rule if he did not comply with the order and move to where he had been directed. *Id*. at 3-4. Despite the fact that he was not interfering with the law enforcement officers on scene and that police were allowing other pedestrians (without cameras) to approach and walk by the scene, Mr. Hogan felt that he could not continue his newsgathering efforts without being arrested, so he left the scene, even though this accident was a matter of great public concern, as many pedestrians had been seriously injured in similar accidents. *Id*. at 4. In addition to Mr. Nicodemus' experience with the twenty-five-foot rule, Mr. Hogan's experience shows that law enforcement officers are willing to readily invoke Section 35-44.1-2-14 against individuals engaged in important First Amendment protected newsgathering activities.

**B. Section 35-44.1-2-14 Gives Law Enforcement Officers Impermissible Unfettered Discretion in Ordering Dispersal Even when Compliance with the Order is not Integral to Carrying Out Law Enforcement Duties.**

The Supreme Court has been clear that police do not have unfettered discretion to block protected speech through enforcement of overbroad laws. In *City of Houston v. Hill*, the Supreme Court held that a city ordinance making it "unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty" was overbroad. 482 U.S. 451, 455 (1987). The Court determined that the ordinance "criminalize[d] a substantial amount of constitutionally protected speech, and accord[ed] the police unconstitutional discretion in enforcement." *Id*. at 466. The Court noted the statute's susceptibility to subjective enforcement in stating that "only some individuals—those chosen by the police in their unguided discretion—are arrested." *Id*. at 466-467. *See also Lewis v. City of New Orleans*, 415 U.S. 130, 135 (1974) (Powell, J., concurring) (reasoning that a statute is overbroad when "[t]he opportunity for abuse, especially where a statute has received a virtually open-ended interpretation, is self-evident.").

The unbridled discretion provided to law enforcement officers by Section 35-44.1-2-14 is nearly identical to the discretion provided by the ordinance in *Hill* that the Supreme Court determined was overbroad. The plain language of the

statute allows an officer the choice of when to restrict an individual from approaching within twenty-five feet. Such unfettered discretion, as highlighted by Justice Powell's concurrence in *Lewis*, provides significant opportunity for abuse. In *Hill*, the Court determined that such broad discretion allowed for subjective enforcement against those engaged in First Amendment protected activities. 482 U.S. at 466-467. Similar unfettered discretion is provided to officers by Section 35-44.1-2-14, creating the same opportunity for subjective enforcement. As such, Section 35-44.1-2-14 is overbroad and substantially burdens more First Amendment protected activity than is necessary to meet its purpose.

Law enforcement officers abusing their unfettered discretion to subjectively enforce dispersal orders is apparent in Mr. Hogan's declaration. In Mr. Hogan's experience a law enforcement officer ordered him to move away from an accident scene—with the threat of arrest if he did not comply—while he was recording the scene for newsgathering purposes. Hogan Decl. at 3-4. The officers issued this order to Mr. Hogan despite issuing no move-away orders to pedestrians who were walking closely past the scene. *Id*. at 4. The order to move back issued to Mr. Hogan illustrates the exact kind of subjective/selective enforcement the Supreme Court was concerned about in *Hill* and *Lewis*. A journalist who was actively engaged in protected First Amendment activity was ordered to move away from the scene of an accident while individuals not engaged in protected activity were

allowed to walk closely past the scene unimpeded. This subjective/selective enforcement, which is strongly enabled by Section 35-44.1-2-14, illustrates the substantial burden the statute places on protected newsgathering activities.

### C. Section 35-44.1-2-14 is a Content-Based Restriction that does not Satisfy Strict Scrutiny.

The Supreme Court has classified two types of regulations as content-based: (1) those that restrict speech because of the idea it conveys, and (2) those that restrict speech because the government disapproves of its message. *Norton v. City of Springfield, III,* 768 F.3d 713, 717 (7th Cir. 2014). Even when a statute appears content-neutral on its face, "if there is evidence that an impermissible purpose or justification underpins a facially content-neutral restriction, for instance, that restriction may be content based." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 142 S. Ct. 1464, 1475 (2022). Such is the case here. "Content-based restrictions on speech . . . can stand only if they survive strict scrutiny." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 171 (2015). Strict scrutiny means "[t]he State must show that the 'regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.'" *Burson v. Freeman,* 504 U.S. 191, 198 (1992). The Seventh Circuit has acknowledged that when a "content-based regulation fails strict scrutiny" it is "substantially overbroad." *Bell*, 697 F.3d at 453 n.2.

Section 35-44.1-2-44 is a content-based restriction that is designed to restrict coverage of police activity. The sponsor of this section stated that this law was meant to prevent members of the public from "getting more and more involved in a situation"—by observing and documenting how police perform their official duties—that are purportedly "none of their business." Corrections and Criminal Law Hearing on HB 1186 (Mar. 7, 2023). Additionally, Indiana already has a law in place that prohibits conduct that interferes with or threatens to interfere with law enforcement. *See* Ind. Code § 35-44.1-3-1(a)(1). The fact that this law existed at the time of Section 35-44.1-2-14's passing shows that its goal is to reach expressive activity that does not involve physical interference with law enforcement's public duties. The stated goal of Section 35-44.1-2-14 can be interpreted to fall under either definition of content-based restrictions as described in *Norton*, especially evidenced by the author's description of recording police activity, a constitutionally protected activity, as being not the public's business. This shows Section 35-44.1-2-14 should be judged under the strict scrutiny standard of review.

Section 35-44.1-2-14 fails strict scrutiny because it is not narrowly tailored. For a statute to be narrowly tailored means that it uses the least restrictive means possible to further the state's compelling interest. *McCullen v. Coakley*, 573 U.S. 464, 478 (2014). The statute provides law enforcement officers with unbridled discretion to stop recording within a certain area, and contains no standards that

would guide them on how to use this discretion. Section 35-44.1-2-14 in effect

provides officers uninhibited discretion to decide whether they want to permit or

deny a person's expressive activity. Further, the 25-foot distance requirement of the

statute is too large, arbitrary, and opens recordings of law enforcement up to having

issues with sound or with picture quality. There are less restrictive means of

accomplishing this goal, and therefore this statute is not narrowly tailored.

Section 35-44.1-2-14 also does not serve a compelling governmental

interest. Currently, Indiana has a plethora of available statutes that could be used to

help with officer safety and non-obstruction while engaging in public duties. For

example, Indiana law already prohibits "forcibly resist[ing], obstruct[ing], or

interfere[ing] with a law enforcement officer" who is engaged in official duties,

(Ind. Code Section 35-44.1-3-1(a)(1); "knowingly or intentionally enter[ing] an

area that is marked off with barrier tape or other physical barriers," after being

denied entry by a public safety officer, Ind. Code Section 35-44.1-3-1(b); and

"knowingly or intentionally interfer[ing] with or prevent[ing] an individual from . .

. making a report to a law enforcement officer," among other things. Ind. Code

Section 35-45-2-5(3). Section 35-44.1-2-14 is an unconstitutional inclusion to

Indiana law that addresses no legitimate government interest, and only exists to

provide officers with unrestricted discretion to stamp out speech they do not like.

An Arizona law that restricted activity within eight feet of officers was struck down in 2022 because it failed the strict scrutiny analysis. *Arizona Broadcasters Ass'n v. Brnovich*, 626 F. Supp. 3d 1102, 1106 (D. Ariz. 2022). The court specifically found the law was not "necessary to serve a compelling state interest" because, as with the Indiana statutes mentioned above, "Arizona already has other laws on its books to prevent interference with police officers. See, e.g., A.R.S. §§ 13-2402, 13-2404." *Id.*

> ### D. Even if Section 35-44.1-2-14 is viewed as a Time, Place, or Manner restriction or a Law that Targets Conduct, it does not Satisfy Intermediate Scrutiny.

Even if this Court determines that Section 35-44.1-2-14 is a content-neutral and reasonable time, place, and manner restriction, it is subject to intermediate scrutiny because of its impact on speech and expressive activity in a public forum. In order to meet this test, it must be "justified without reference to the content of the regulated speech, [] narrowly tailored to serve a significant governmental interest, and [it must] leave open ample alternative channels for communication of the information." *McCullen v. Coakley*, 573 U.S. 464, 477 (2014) (citing *Ward v. Rock Against Racism*, 491 U. S. 781, 791 (1989)).

A statute that "condition[s] the free exercise of First Amendment rights on the 'unbridled discretion' of government officials" is never narrowly tailored, even under intermediate scrutiny. *Gaudiya Vaishnava Soc'y v. City & Cnty. of San*

*Francisco*, 952 F.2d 1059, 1065 (9th Cir. 1990) (quoting *City of Lakewood*, 486 U.S. at 755).

Section 35-44.1-2-14 is too broad and allows law enforcement officers with unchecked discretion to silence speech. The statute contains no standards that provide officers with a way of determining if and whether to use their discretion and when an officer may issue an order. Additionally, the statute does not require any actual disruption to law enforcement duties. Both of these flaws are fatal, and the Seventh Circuit has previously struck down an ordinance as unconstitutional that had such flimsy standards. *See Bell*, 697 F.3d at 455 (determining an ordinance to be unconstitutional due to standards of enforcement written in statute being vague and for it having the potential to be issued to individuals exercising protected First Amendment rights without any showing of necessity). The complete lack of standards for enforcement allows officers unbridled discretion to disrupt protected speech, and therefore is unconstitutional.

## III.    Section 35-44.1-2-14 is Unconstitutionally Vague.

The experiences of journalists Mr. Nicodemus and Mr. Hogan bring to light the dangers of unconstitutionally vague laws that affect speech and the press. Vague laws violate due process because they both "fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" and they "may authorize and even encourage arbitrary and discriminatory

enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). The facts of this case and others bear out the manner in which enforcement has been arbitrary and capricious in being targeted at newsgathering. Statutory vagueness is an especially important issue when laws implicate the First Amendment. *Smith v. People of the State of California*, 361 U.S. 147, 151 (1959) ("[S]tricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech."); *Grayned v. City of Rockford*, 408 U.S. 104,109 (1972) ("[W]here a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it 'operates to inhibit the exercise of those freedoms.'") (citation omitted).

In holding that a fifteen-foot moving buffer zone on speech was unconstitutionally vague, the Supreme Court reasoned that the buffer zone made it difficult for individuals to "to know how to remain in compliance." *Schenck*, 519 U.S. at 378. This is especially true for buffer zones that "float" or are continuously moving. *Id*. Section 35-44.1-2-14 provides this exact type of buffer zone because the twenty-five-foot zone moves as an officer moves. An individual who is recording police or engaged in other expressive activity must continuously move as the officer moves to avoid being subjected to a stay-back or dispersal order. This standard is of course difficult if not impossible to comply with in many situations.

Accordingly, Section 35-44.1-2-14 is vague because it does not provide fair notice as to when an individual may be violating the order.

In *Kolender v. Lawson* the Supreme Court held that a statute that criminalized loitering was unconstitutionally vague because of its restrictions on a public presence. 461 U.S. 352, 358, 361 (1983). The restrictions on First Amendment rights here restrict a public presence like those in *Kolender*. Following *Kolender*, and applying the "stricter standards" of vagueness doctrine that are appropriate when the First Amendment is implicated, the lack of notice provided by Section 35-44.1-2-14 and the enforcement discretion provided to officers are impermissible.

Because the 25-foot zone is only required at the whim of individual police officers and is a moving target, section 35-44.1-2-14 does not provide fair notice to individuals as to when they may be subjected to an order to stay back or disperse. Laws that provide officers the power to issue such orders must be written so "an ordinary individual can understand when his failure to move is criminalized." *Bell*, 697 F.3d at 461. Here, the only standard provided in Section 35-44.1-2-14 for when an individual may be subjected to such an order is the arbitrary order of any officer, and the resulting invisible, moving, twenty-five-foot perimeter that it creates.

The discretion provided to law enforcement officers by Section 35-44.1-2-14 allows for arbitrary and discriminatory enforcement and "impermissibly delegates to law enforcement the authority to arrest and prosecute on an ad hoc and subjective basis." *Bell*, 697 F.3d at 462. In *Bell*, the Seventh Circuit held that allowing officers to issue dispersal orders to avoid "serious inconvenience" and "annoyance" allowed for arbitrary application. *Id*. at 463. Here, Section 35-44.1-2-14 allows for restrictive orders even when "serious inconvenience," "annoyance," or any other activity that questionably may disrupt law enforcement duties are not present. Officers have complete discretion in issuing an order to those within or approaching the twenty-five-feet encroachment zone. This complete discretion necessarily allows officers to issue orders and threats of arrest on an "ad hoc and subjective basis." Because Section 35-44.1-2-14 implicates the First Amendment, "stricter standards" of statutory vagueness doctrine may be applied. Here, Section 35-44.1-2-14 implicates the First Amendment to a substantial extent because of its restrictions on public presence and expressive activity within twenty-five-feet of a police officer. Accordingly, here, "a more stringent vagueness test should apply." *Village of Hoffman Estates. v. Flipside, Hoffman Estates., Inc.*, 455 U.S. 489, 499 (1982). Under these clear Supreme Court and Seventh Circuit holdings, the statute is unconstitutionally vague.

## CONCLUSION

Because of the serious constitutional concerns with the statute in this case,

*Amici* urge this court to find the statute unconstitutional on its face and reverse.

Gregg P. Leslie
    Gregg.Leslie@asu.edu
Zachary R. Cormier
    zcormier@asu.edu
First Amendment Clinic
Public Interest Law Firm
Sandra Day O'Connor College of Law
Arizona State University
111 E. Taylor St., Mailcode 8820
Phoenix, AZ 85004
(480) 727-7398


Mickey H. Osterreicher
General Counsel
National Press Photographers Association
70 Niagara Street
Buffalo, NY 14202
(716) 983-7800
lawyer@nppa.org

Alicia Calzada
Deputy General Counsel
National Press Photographers Association
Alicia Wagner Calzada, PLLC
926 Chulie Drive, suite 16
San Antonio, Texas 78216
(210) 825-1449
Advocacy@nppa.org

**DECLARATION OF JEREMY HOGAN**

I, Jeremy Hogan, declare as follows:

1.      I am over the age of 18. I have personal knowledge of the facts set forth in this declaration and could and would testify competently to those facts if called as a witness.

2.      I am a visual journalist and the owner, editor and publisher of the Bloomingtonian, an online visual journalism service covering Bloomington and the surrounding area, available through its website, on social media, and via Patreon, an online app for creators to build community with their biggest viewers by sharing their exclusive work.

3.      The Bloomingtonian has over 30,000 followers just on Facebook.

4.      The site has had 2.5 million users, and 4.5 million sessions since March 2019.

5.      In the last 12 months, the site has had 642,000 users and 1.6 million views.

6.       My career as a visual journalist began in 1993, freelancing during high school for a local newspaper.

7.      In 1997, I received a B.S. in Journalism from San Jose State University.

8.     During my career I interned at the Indianapolis News, Kansas City Star, and Palm Beach Post.

9.     I have been a member in good standing of the National press Photographers Association (NPPA) since 1993.

10.     In 1997 I began work at The Herald-Times in Bloomington, Indiana as a staff photographer and remained in that position until 2019 when the newspaper changed ownership.

11.     In 2023, I was awarded runner-up honors for Indiana News Photographer of the Year. He covers local, regional, and national news. Hogan's editorial video work, including coverage of Ukraine in 2014, and the 2016 and 2020 presidential elections, is represented by Getty Images. Hogan's still photography is distributed globally by several photo agencies, and regularly appears in national and international publications.

12.     On January 18, 2024I, at approximately 6:17 p.m. I received a tip that a pedestrian had been struck on East Third Street across from Indiana University in Bloomington, Indiana.

13.     Being nearby, I responded to the scene because I was aware of several vehicular accidents involving university students, who had been struck, and killed crossing streets near the university and I knew my readers were interested in these stories.

14.     When I arrived at the location, I parked several blocks away and walked to the scene of the accident.

15.     There was a police car parked on Third Street at least 100 yards from the crash scene to block traffic East of the collision.

16.     As I arrived, I saw several emergency workers around a person in the street.

17.     I kept a good distance not wanting to disturb the workers and chose angles that would not show the person's identity.

18.     It is not my goal to make sensational photos, but to make photos that give visual information that goes with the report on the situation.

19.     I can convey information in photos that words will not.

20.     From my location, I observed a person being loaded into the ambulance.

21.     There was no police tape up, no perimeter established, and traffic was passing the scene in the lane closer to the university.

22.     Pedestrians were free to walk through the accident scene, and up and down the sidewalk.

23.     After they loaded the woman, I moved a bit closer, and began to write down notes about what I'd seen because I also had to write a story.

24.     I did not ask officers for information because I knew that all such requests must go through a public information officer.

25.     I also did not wish to interrupt police officers, and other responders, who were working.

26.     As I was taking some notes, I photographed a police officer with the Indiana University Police Department walking my direction.

27.     As he approached me, he told me I was going to have to move behind a fire engine that was parked to the west at least 100 feet away from the scene, which was now cleared because the accident victim was gone, along with the ambulance transporting her.

28.     The officer did not explain why I needed to move.

29.     I asked if he was going to arrest me under the 25-foot rule, and he indicated he didn't want to, but he would do so.

30.     At that point, I felt like I could no longer work, or do my job, and facing the risk of arrest, I decided to leave.

31.     I was also worried that police might claim I resisted arrest in addition to the 25-foot rule charge.

32.     I felt that my constitutional rights were being denied, especially since others were being allowed to walk up and down the sidewalk, and were even jaywalking, yet nothing was said to them.

33.     Once home, I listened to archived police scanner broadcasts about the incident and was shocked to hear a female officer telling the officer who approached me that she wanted me removed from the scene because she interpreted and decided that my presence, and my cameras were making someone nervous.

34.     I published a photo and story about this. See:

 https://bloomingtonian.com/2024/01/18/woman-struck-by-vehicle-thursday-near-indiana-university-but-details-prove-hard-to-confirm/

35.     I declare under penalty of perjury that the foregoing is true and correct.

Dated this 15th day of March 2024.

By:     <u>s/ Jeremy Hogan</u>

Jeremy Hogan

# CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 5(c)(1) and Circuit Rule 29 for Amicus briefs because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 5,323 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, point size 14.

s/ Gregg P. Leslie
Gregg P. Leslie, Counsel of Record